**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**KAITLIN GATES ENGLER**                                    **CIVIL ACTION**

**V.**                                                       **NO. 25-145**

**PAYCOM PAYROLL, LLC**                                      **SECTION: C (1)**


**ORDER AND REASONS**

Before the court is <u>Defendant Paycom Payroll, LLC's Motion for Summary Judgment</u> filed on January 20, 2026 (R. Doc. 35), which seeks dismissal of the claims of plaintiff, Kaitlin Gates Engler. Engler brings three claims: (1) retaliation under the Family and Medical Leave Act, (2) retaliation under section 510 of the Employee Retirement Income Security Act, and (3) detrimental reliance under Louisiana Civil Code article 1967. Summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

I.      **BACKGROUND**

Engler began working for Paycom in 2019 as a sales representative in St. Louis.[1] In September 2022, Rob Magness promoted her to sales manager of Paycom's New Orleans office.[2] At the time of her promotion, it was known that Engler was pregnant and would need leave.[3] With the promotion, Engler received 1,000 unvested shares of Paycom stock under the company's 2014 Long-Term Incentive Plan.[4]

---

[1]      R. Doc. 38 at 3, ¶ 8.
[2]      R. Doc. 38 at 4, ¶¶ 12-15.
[3]      R. Doc. 38 at 4, ¶ 13.
[4]      R. Doc. 38 at 5, ¶ 19.

Engler's daughter was born on December 8, 2022.[5] Paycom granted Engler FMLA leave, later granted an additional week at her request, and paid benefits under its parental leave policy.[6] Engler returned to work on March 13, 2023.[7] Following the decision made March 17, 2023, Engler was terminated on March 20, 2023.[8]

While Engler was on leave, Elizabeth Grace Sylvest, a sales representative who reported to Engler, resigned.[9] In her exit interview, Sylvest said she was quitting due to issues working with Engler and accused her of directing sales representatives to falsify records, specifically, to document that Engler attended meetings she did not attend and to document calls and appointments that did not occur.[10] Following these accusations, Kate Park, a Paycom human resources supervisor, investigated the alleged conduct.[11] Her investigation consisted of interviews with current Paycom employees.[12]

The parties dispute what the investigation showed. Paycom contends it substantiated that Engler instructed subordinates to falsify records in violation of the company's ethics code.[13] Engler denies directing anyone to falsify records and alleges the investigation was incomplete, one-sided, and a pretext for her retaliatory discharge.[14]

---

[5]  R. Doc. 38 at 9, ¶ 34.
[6]  R. Doc. 38 at 9, ¶¶ 35, 36.
[7]  R. Doc. 38 at 11, ¶ 42.
[8]  R. Doc. 38 at 13-14, ¶ 50.
[9]  R. Doc. 38 at 9, ¶ 38.
[10] R. Doc. 38 at 10, ¶ 39. Paycom sales employees use a program called Insite to record meetings and data related to appointments with prospective customers. At the end of each week, sales representatives submit a "hot list" listing meetings they attended during the week and the results of those meetings. R. Doc. 38 at 12, ¶ 47.
[11] R. Doc. 38 at 10, ¶ 40.
[12] R. Doc. 38 at 11-12, ¶¶ 43-46.
[13] R. Doc. 35-2 at 6.
[14] R. Doc. 37 at 9-12.

Engler sued. She claims Paycom fired her in retaliation for taking FMLA leave, in retaliation for her approaching stock-vesting dates, and in breach of promises that induced her to accept the New Orleans position and relocate from St. Louis.[15]

## II.   LAW AND ANALYSIS

Summary judgment under Federal Rule of Civil Procedure 56 must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The movant has the initial burden of "showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). The respondent must then "produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat. Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). Evidence that is "merely colorable" or "is not significantly probative" is not sufficient to defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"An issue is material if its resolution could affect the outcome of the action." *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001). Thus, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. Although this Court must "resolve factual controversies in favor of the nonmoving party," it must only do so "where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). The Court must not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

---

[15]      R. Doc. 1.

"Summary judgment is appropriate where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant." *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993). Summary judgment is also appropriate if the party opposing the motion fails to establish an essential element of her case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### A. FMLA Retaliation

The FMLA generally provides for up to 12 weeks of leave in any 12-month period due to the birth of a child. 29 U.S.C. § 2612(a)(1)(A). It prohibits retaliation against employees who exercise these rights. *Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 580 (5th Cir. 2006).

FMLA retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *Garcia v. Penske Logistics, L.L.C.*, 631 F. App'x 204, 210 (5th Cir. 2015). "To survive summary judgment under this framework, an employee must first make a prima facie case of retaliation." *Id.* The burden then shifts to the employer to provide a "legitimate, non-discriminatory reason for the employment decision." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (internal quotations omitted). "If the employer articulates a legitimate, non-discriminatory reason for the employment decision, the burden returns to the plaintiff, who must then be afforded an opportunity to rebut the employer's purported explanation with evidence that the reason given is merely pretextual." *Garcia*, 631 F. App'x at 210. "A prima facie case coupled with a showing that the proffered reason was pretextual will usually be sufficient to survive summary judgment." *Id.* (internal quotations omitted).

To make a prima facie case of FMLA retaliation, a plaintiff must show "(1) he was protected under the FMLA; (2) he suffered an adverse employment action; and (3) he was treated

less favorably than an employee who had not requested leave under the FMLA *or* the adverse decision was made because he sought protection under the FMLA." *Campos*, 10 F.4th at 527 (internal quotations omitted) (emphasis added). The third element requires a causal link. *Id.*

Here, the first two elements are not disputed. Engler took maternity leave under the FMLA, which is a protected activity.[16] Then, Engler suffered "an adverse employment action."[17] *See Hassen v. Ruston La. Hosp. Co., L.L.C.*, 932 F.3d 353, 358 (5th Cir. 2019) ("termination is a classic example of adverse employment action"). She was terminated on March 20, 2023.[18]

The third element is disputed. That is, can Engler prove a "causal link" between her FMLA leave and termination. *Campos*, 10 F.4th at 527 (internal quotations omitted) (emphasis added). Engler argues she "easily meets the causal link standard" because the investigation into her conduct began 10 days into her FMLA leave, and she was terminated seven days after returning from leave.[19] Paycom argues Engler cannot show a causal link because she "cannot show she was treated less favorably than a similarly situated employee."[20]

When evaluating whether a causal link exists, the "temporal proximity" between the FMLA leave and the termination must be considered. *Mauder*, 446 F.3d at 583. The plaintiff is not required to show that taking FMLA leave is the only cause of her termination. *Id.* Nor is she required to "show she was treated less fairly than another employee," if she can show a causal connection between taking FMLA leave and her termination. *Id.*

Temporal proximity must be "very close" to establish a prima facie case. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (per curiam) (a 20-month period between the

---

[16]    R. Doc. 35-2 at 3; *see also* 29 U.S.C. § 2612(a)(1).
[17]    R. Doc. 35-2 at 2.
[18]    R. Doc. 38 at 13-14, ¶ 50.
[19]    R. Doc. 37 at 5.
[20]    R. Doc. 35-2 at 3.

protected activity and adverse employment decision was not close enough to establish temporal proximity). 17 days, 15 days, and 10 days have been found sufficient to establish a causal connection. *Crain v. Schlumberger Tech. Co.*, 187 F. Supp. 3d 732, 741-42 (E.D. La. 2016) (listing cases).

The investigation of Engler was opened December 22, 2022, approximately two weeks after her FMLA leave began.[21] She was fired seven days after returning from FMLA leave.[22] The temporal gap is sufficiently close to establish a prima facie case of FMLA retaliation.

The burden then shifts to Paycom to provide a "legitimate, non-discriminatory reason for the employment decision." *Tatum v. S. Co. Servs.*, 930 F.3d 709, 713 (5th Cir. 2019) (internal quotations omitted). Paycom contends Engler was terminated because she violated Paycom's ethics code by instructing her subordinates to falsify company records.[23] Engler was alleged to have "(1) instructed sales representatives to falsify documents indicating [Engler]'s attendance at sales meetings she did not attend, (2) instructed sales representatives to falsify documents showing they made calls and appointments they did not actually make or schedule, (3) gossiped about her subordinates, and (4) refused [the subordinate employee] time off when her grandfather was ill."[24] Paycom interviewed sales representatives who reported to Engler, some of whom confirmed the allegations.[25] Thus, it concluded Engler falsified records and terminated her employment.[26] Paycom's proffered reason for termination is a legitimate, non-discriminatory justification.

The burden then shifts back to Engler to "raise an issue of material fact that the employer's proffered reason was pretextual." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017).

---

[21]    R. Doc. 38-12 at 17; R. Doc. 38 at 9, ¶ 34.
[22]    *See* R. Doc. 35-1 at ¶ 42; R. Doc. 35-2 at 2.
[23]    R. Doc. 35-2 at 5-6.
[24]    R. Doc. 35-2 at 5.
[25]    R. Doc. 35-2 at 5-6; *but see* R. Doc. 38-12 at 11.
[26]    *See* R. Doc. 35-2 at 6; R. Doc. 35-2 at 2; R. Doc. 38 at ¶ 42.

Engler's burden is high. *Grimes v. Wal-Mart Stores Texas, L.L.C.*, 505 F. App'x 376, 380 (5th Cir. 2013). To prove pretext, Engler must show either Paycom's nondiscriminatory reason is untrue or, if true, is only one of the reasons for the adverse action taken. *Id.* It is here, in a very close call, that I find disputed questions of fact that preclude summary judgment.

In addition to denying that she falsified anything, Engler asserts three theories challenging the truthfulness of Paycom's proffered reason for terminating her employment: (1) no one else was ever fired for falsifying time and attendance records;[27] (2) Paycom did not follow its usual practice of progressive discipline before the ultimate act of firing her;[28] and (3) Engler was fired without an opportunity to defend herself.[29]

Paycom replies to each challenge, while also asserting the "honest belief" rule which relies upon the honesty and reasonableness of Paycom's investigation.[30] *Brown v. SCF Waxler Marine, LLC*, 2021 WL 199534, at *4 (E.D. La. Jan. 20, 2021); *see also Hernandez v. Metro. Transit Auth.*, 673 F. App'x 414, 419 n.5 (5th Cir. 2016). Embedded in each of these arguments are disputed, conflicting facts. The court cannot resolve such conflicts without weighing credibility, which cannot be done on summary judgment. *M/V Admiral Bulker v. United Bulk Terminals Davant*, 397 F. Supp. 3d 826, 835 (E.D. La. 2019). Summary judgment on the FMLA retaliation claim is **DENIED**.

### B.    ERISA Retaliation

ERISA Section 510 makes it unlawful to discharge an employee for the purpose of interfering with rights to which she would become entitled under an employee benefit plan. 29

---

[27]    R. Doc. 37 at 8-9.
[28]    R. Doc. 37 at 12-13.
[29]    R. Doc. 37 at 9-11.
[30]    R. Doc. 39 at 5.

7

U.S.C. § 1140. Engler claims Paycom fired her to keep her unvested stock from vesting.[31] The threshold question is whether the stock awards are an ERISA plan.

ERISA governs welfare plans and pension plans. 29 U.S.C. § 1002(1)-(3). Engler does not contend the stock awards are a welfare plan, so, to fall under ERISA, the awards must qualify as a pension plan. 29 U.S.C. § 1002(3); *see also Lockheed Corp. v. Spink*, 517 U.S. 882, 891 (1996) ("ERISA defines a 'plan' as being either a welfare or pension plan, or both."). A pension plan is one that provides retirement income or results in a deferral of income for periods extending to the termination of covered employment or beyond. 29 U.S.C. § 1002(2)(A). The Fifth Circuit restricts "retirement income" to "plans designed for the purpose of paying retirement income whether as a result of their express terms or surrounding circumstances." *Murphy v. Inexco Oil Co.*, 611 F.2d 570, 575 (5th Cir. 1980).

The stock awards neither provide retirement income nor defer income beyond termination. The stated purpose of the 2014 Long-Term Incentive Plan is to attract and retain key employees and to give them a proprietary interest in the company.[32] The Restricted Stock Award Agreements state that the awarded shares are intended to give the participant a long-term stake in the company, an incentive to contribute to performance, and an alignment of interests with stockholders.[33] Nothing in the plan or the agreements provides retirement income. And the awards do not defer income to termination or beyond. They vest during employment, on fixed dates, so long as the participant remains employed.[34] A plan that pays out while the employee is still working does not defer income to termination or retirement. *See Long v. Excel Telecomms. Corp.*, 2000 WL 1562808, at *4 (N.D. Tex. Oct. 18, 2000) (stock plan with a vesting schedule was not an ERISA plan because

---

[31]    R. Doc. 1 at 8.
[32]    R. Doc. 38-11 at 1.
[33]    R. Doc. 38-16 at 1.
[34]    R. Doc. 38-16 at 4-7.

it did not systematically defer payment to termination and was not created to provide retirement income).

Engler acknowledged that the President's Club shares were a bonus and that the larger 1,000-share award accompanied her promotion.[35] An incentive bonus does not become a pension plan by vesting over time. *See, e.g.*, *Murphy*, 611 F2d at 575 (holding that a plan which pays royalty interest to an employee is not covered by ERISA because "[i]t is an inherent characteristic of the royalty interest that it is paid on oil and gas production whenever that is realized").

Engler relies on *Holzer v. Prudential Equity Group, LLC*, 458 F. Supp. 2d 587 (N.D. Ill. 2006), which is distinguishable. *Hozler* arose on a motion to dismiss, not summary judgment, and turned on a contributory plan in which employees deferred a portion of their own wages, a structure not present here. 458 F. Supp. 2d at 589. *Holzer* also rested on allegations that the plan was promoted as a way to defer income until retirement. *Id.* at 590-91. Here, the awards vest during employment.[36]

Because the stock awards are not an ERISA plan, ERISA does not apply, and Engler's Section 510 claim fails as a matter of law. Summary judgment on the ERISA retaliation claim is **GRANTED**.

### C.    Detrimental Reliance

Engler's final claim is detrimental reliance under Louisiana Civil Code article 1967.[37] She says Paycom promised her stock benefits to induce her to accept the New Orleans position and relocate from St. Louis, and that she relied on that promise to her detriment when her husband left his job, the family moved while she was pregnant, and they bought a home.[38]

---

[35]    R. Doc. 38-1 at 23-24.
[36]    R. Doc. 38-16 at 1.
[37]    R. Doc. 1 at 9.
[38]    R. Doc. 37 at 23; R. Doc. 38-1 at 24.

Detrimental reliance is designed to "prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence." *La. Off. of Risk Mgmt. v. Richard*, 2013-0890, p. 5 (La. 10/15/13), 125 So. 3d 398, 402. To prove detrimental reliance, a plaintiff must show "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." *Suire v. Lafayette City-Parish Consol. Gov't*, 2004-1459, p. 31 (La. 4/12/05), 907 So. 2d 37, 59. The doctrine is not favored in Louisiana. *See Richard*, 125 So. 3d at 402.

The first element is a threshold one. Without a promise on which the plaintiff could reasonably rely, the claim fails. *Oliver v. Cent. Bank*, 26,932, p. 11 (La. App. 2 Cir. 5/10/95), 658 So. 2d 1316, 1323 ("A condition precedent to proving a claim for detrimental reliance is demonstrating the existence of a promise upon which the injured party could reasonably rely."). The promise must be clear and unambiguous. *See id.* (finding no promise where there was no "affirmative act" by the defendant). "The mere expression of an intention is not a promise." *La. Health Serv. & Indemnity Co. v. Robinson*, 2023-0052, p. 13 (La. App. 1 Cir. 6/2/23), 369 So. 3d 419, 428 (internal quotations omitted).

Engler's claim fails because the promise she identifies was kept. Engler pled the promise this way: Paycom represented that, if she accepted employment in Louisiana, she would qualify for a stock incentive plan.[39] She did qualify. Paycom awarded her shares under the 2014 Long-Term Incentive Plan, both with her promotion and through the President's Club.[40] Engler received what she says she was promised, that is, the opportunity to participate in the plan. She was not promised the shares would vest. Vesting was expressly conditioned on continued employment.

---

[39]    R. Doc. 1 at 9.
[40]    R. Doc. 38-1 at 22; R. Doc. 35-4 at 90-101; R. Doc. 35-4 at 102-114; R. Doc. 35-4 at 115-126; R. Doc. 35-4 at 127-151.

Engler asked Magness about the vesting schedule in September 2022, before her promotion, and he explained that one half of the shares would vest after two years and the other half after three.[41] The Restricted Stock Award Agreements she signed say the same thing: the shares vest on future dates only if the participant remains employed, and unvested shares are forfeited on termination.[42] A promise that Engler would qualify for and participate in a stock plan is not a promise that her shares would vest regardless of whether she remained employed. The record contains no clear and unambiguous promise of the latter. A detrimental reliance claim cannot rest on something Paycom never promised.

Because Engler cannot show a promise on which she could reasonably rely, her detrimental reliance claim fails as a matter of law. The court does not reach the reasonableness of her reliance or whether her change in position was caused by the alleged promise. Summary judgment on the detrimental reliance claim is **GRANTED**.

## IV.    CONCLUSION

A genuine dispute of material fact exists on whether Paycom's proffered reason for firing Engler was a pretext for FMLA retaliation. Engler's remaining claims fail as a matter of law. The stock awards are not an ERISA plan, and Paycom kept the promise on which Engler's detrimental reliance claim depends. Accordingly,

**IT IS ORDERED** that Paycom's motion is **GRANTED** as to Engler's ERISA Section 510 retaliation claim and her detrimental reliance claim, and those claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Paycom's motion is **DENIED** as to Engler's FMLA retaliation claim, which will proceed to trial.

---

[41]    R. Doc. 39-2 at 5-7.
[42]    R. Doc. 38-16 at 4-7.

New Orleans, Louisiana, this 30th day of June, 2026.

_____

WILLIAM J. CRAIN
UNITED STATES DISTRICT JUDGE